580 So.2d 1098 (1991)
Gloria RUSS
v.
Larry JONES, et al.
No. 90-CA-1802.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
*1099 Glen A. Woods, Bruce J. McConduit & Associates, New Orleans, for appellee.
Kevin K. Gipson, Donovan & Lawler, Metairie, for appellants.
Before GARRISON, WILLIAMS and BECKER, JJ.
WILLIAMS, Judge.
In this appeal, defendants Larry Jones and Budget Rent-a-Car claim the trial court manifestly erred in assessing the damages awarded to plaintiff, Gloria Russ. We agree. The blatantly contradictory evidence on the underlying facts, provided by Russ's treating physician, was not binding on the trial court. Thus, the trial court erred in considering itself constrained to accept the physician's testimony merely because defendants did not present expert rebuttal testimony. The record, therefore, reflects that the trial court manifestly erred in awarding damages through October 2, 1986, as Russ's examination for a second accident substantiated that the pain and symptoms caused by her first accident had been resolved by August 5, 1986. Consequently, her award is reduced to eliminate the double billed medical expenses charged by her physician and to eliminate the excessiveness of her pain and suffering award.

FACTUAL AND PROCEDURAL HISTORY
At trial, the parties stipulated that on July 2, 1986, at approximately 3:00 p.m., a 1984 LTD operated by Gloria Russ was struck by a 1985 Dodge Colt owned by defendant Budget Rent-a-Car and driven by defendant Larry Jones. The parties also stipulated that the accident was caused by the negligence of Jones; Russ was not at fault. Trial evidence was limited to quantum.
Dr. Henry Evans, Jr., a medical physician, was the first of Russ's two witnesses. He testified that he first treated Russ on July 3, 1986, and continued treating her until October 2, 1986. He identified the bill for his services in the amount of $1,160 which included the cost of office visits and physical therapy rehabilitation.
Dr. Evans testified that when he first examined Russ on July 3, 1986, her primary complaints pertained to pain and stiffness in her shoulders and back. He subsequently examined her on July 17th and July 31st. He testified that during those examinations, Russ indicated to him that her shoulder had improved, but she continued to experience pain in her back. After she was involved in a second accident on August 4, 1986, Dr. Evans testified she complained of pain in her neck and shoulder. Thus, he believed the second accident primarily involved injury to Russ's neck.
On cross-examination, defense counsel questioned Dr. Evans about the two reports he prepared for Russ's attorney, the first concerning the July 3rd accident and the second one concerning the August 4th accident.[1] Dr. Evans confirmed his August 5, 1986 examination of Russ, detailed in the report prepared for the second (August 4th) accident but not in the report prepared for the first accident, showed no low back spasm or pain. Nevertheless, he accounted for the inconsistent finding by explaining that, on August 5th Russ's back pain could have abated due to her medication, her response to treatment and/or her physical activity.
When Dr. Evans was questioned as to why the report he prepared for the first accident did not refer to or acknowledge the second accident, and vice versa, the trial court ruled the question was irrelevant, labeling the omission "stylistic." However, the trial court allowed defense *1100 counsel to question Dr. Evans as to why the report for the second accident, in the section labeled "past medical history," failed to discuss the first accident. In response, Dr. Evans apologized for the omission but dismissed it as an oversight.
When questioned about Russ's office visits on August 14 and 18, September 4, and October 4, Dr. Evans confirmed he separately billed both of Russ's accident files, i.e., double billed for the office visits. He admitted he did the same for her numerous sessions of physical therapy. In explanation he stated that, as a result of her second accident, Russ's therapy required more personnel, supplies and time. Consequently, he submitted two bills, one to the first accident file and the other to the second accident file, for the same services.[2]
Dr. Evans also confirmed the first accident report states that, on October 2, 1986, he found there was "no pain or spasm noted of the shoulder paravertebral muscle on palpation of immobilization of the patient." He explained that he believed the signs and symptoms relating to the first accident had practically resolved themselves. He advised Russ that her symptoms appeared self-limiting. Thus, he "discharged Russ from his care" and admonished her to call on him if any of her symptoms returned at a pragmatic level.
Dr. Evans also confirmed that the report prepared for the second accident indicates that on October 2, 1986, Russ continued to experience neck pains in her right paraspinous muscle. Consequently, Russ was not actually discharged from his care until October 16, 1986.
Russ was the concluding witness. She testified she experienced shoulder, neck and back pain after the July 3rd accident. She claimed she was still experiencing a little back pain when she was involved in the second accident. Afterwards, her neck and shoulders troubled her.
At the close of testimony, the trial court indicated that it accepted the medical charges of $1,160 as reasonable, since it was without countervailing expert testimony, strictly based on Dr. Evans' testimony. The court described the pain and suffering expressed by Russ as "minimal," and found Dr. Evans' explanation of his double billing practices and his conflicting reports sufficiently logical for the court to accept. Thus, the court awarded Russ $3,000 for pain and suffering and $1,160 for medical expenses.
The judgment in favor of Russ and against Jones and Budget Rent-a-Car, in the amount of $4,160 plus costs, was signed on June 1, 1990. Thereafter, Jones and Budget Rent-a-Car suspensively appealed the judgment.

PROOF OF DAMAGES
The value of an expert witness' opinion depends on the existence of the facts on which it is predicated. Audubon Ins. Co. v. State Farm Mut. Ins. Co., 425 So.2d 907 (La.App. 4th Cir.1983); Johnson v. Masur, 493 So.2d 881 (La.App. 3d Cir. 1986); State Dept. of Highways v. Beaird-Poulan, Inc., 292 So.2d 842 (La.App. 2d Cir.1974), aff'd, 305 So.2d 505 (La. 1975). For an expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record. Audubon Ins. Co. v. State Farm Mut. Ins. Co., supra; Gardiner v. Commercial Union Ins. Co., 488 So.2d 1331 (La.App. 3d Cir.1986). Further, though it may not be lightly disregarded, even uncontradicted expert testimony on underlying facts is not binding on the trier of fact. Philip Werlein, Ltd. v. Daniels, 538 So.2d 722 (La. App. 4th Cir.1989), writ den., 543 So.2d 21 (La.1989); Matthias v. Brown, 551 So.2d 821 (La.App. 3d Cir.1989), writ den., 556 So.2d 1263 (1990).
Applying these precepts, we find the trial court erred by adhering to Dr. Evans' testimony and awarding medical expenses according to the amount he assessed in the July 3rd accident file, merely because no expert witness contradicted his *1101 testimony. The trial court was not bound to accept Dr. Evans' testimony pertaining to his diagnosis and treatment of Russ. Further, expert rebuttal testimony would have been superfluous for establishing that Dr. Evans' evidence was inconsistent and contradictory. The opinion he expressed and the facts he predicated were undermined by the comparison of his two reports and a comparison of the reports to his testimony.
A review of Dr. Evans' written evaluation of Russ's initial examination of July 3, 1986, shows that Russ (age 52, weight 171 lbs.),
was able to perform the toe touching maneuver, in the reversal of the lordotic curvature, but with exquisite pain and tenderness noted. Examination of the paraspinous muscles of the Lumbar spine upon flexion and extension, and levro and dextro rotation of the trunk, was positive for pain and limitation of motion. There was also pain and spasm noted of the paraspinous muscles interspinous ligament upon palpation. The straight leg raising test was also positive for the production of pain at the 90 degree elevation mark. Examination of the shoulders through the maneuvers of abduction and adduction of the shoulder girdles, bi-laterally, was positive for pain having been exhibited at the level of the right shoulder, rotator cuff muscles, and upon palpation, suggesting underlying spasm.
However, the report Dr. Evans prepared for the second accident indicates that a month later, on August 5th, his examination of Russ revealed,
She was able to perform the toe touching maneuver, in the reversal of the lordotic curvature, without any pain having been produced. Examination of the paraspinous muscles of the lumbar muscles of the lumbar region was unremarkable. There was no pain or spasm noted upon palpation. The patient was observed to have been able to comply with a full range of motion maneuvers of the trunk, without any instances of pain, limitation of motion, or subjective complaints. Examination of the shoulders through the maneuvers of abduction and adduction of the shoulder girdles, bi-laterally, was positive for pain having been exhibited of the Right member, at the level of the Levator Scapulae, with palpable pain noted and an intensification of the symptomology in conjunction with mobilization of the corresponding extremity in that articulation, suggestive of underlying spasm.
The results of the October 2, 1986, follow-up examination described in the report Dr. Evans prepared for the first accident indicates,
[S]he stated that she felt well and that she felt that the symptoms had decreased in frequency and intensity, and that she generally felt much better. Physical examination on that occasion yielded essentially unremarkable results. There was no pain or spasm noted of the shoulders or paravertebral muscles upon palpation or mobilization of the head or trunk; nor subjective complaints of the same on the part of the patient ... I discharged Ms. Russ from my care at that time ...
Nevertheless, the report Dr. Evans prepared for the second accident describes the findings of the same October 2, 1986 follow-up examination as follows:
On each occasion [on 09/04 and 10/12, 1986] she lodged essentially the same complaints that of persistent pains of the neck, which she described as soreness... Examination on each occasion yielded essentially commensurate findings. There was persistent palpable pain noted of the right paraspinous muscles of the cervical zone, suggestive of the underlying spasm ...
Due to these contradictory evaluations, we find Dr. Evans' diagnosis and the facts upon which it was based, is without merit. Rather, the evidence substantiates finding that the pain Russ felt as a result of the first accident lingered through early August. According to the initial examination report, after the first accident Russ complained of stiffness in her shoulders and back. Russ testified that, by the time *1102 she was involved in the second accident, she continued to experience "a little" back pain. She did not mention continued pain in her shoulders. Dr. Evans' examination of her on August 5th and October 2nd, as reported in the report prepared for the second accident, revealed no signs of back pain. The report specifically noted no sign of pain or spasm was found upon palpation and the paraspinous muscles of the lumbar region were unremarkable. Further, the report showed Russ was able to comply with the full range of motion maneuvers of the trunk without instances of pain, limitation on motion or subjective complaints. Thus, the evidence limits Russ's recovery for pain, suffering and medical expenses to the time period encompassing July 3rd through August 5th.[3]
Based on the foregoing, we find the trial court manifestly erred in assessing Russ's damage award. The amount awarded for medical expenses was an abuse of discretion and the amount awarded for pain and suffering was excessive. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). The highest amount substantiated by the record for medical expenses is $650 based upon $60 for Russ's initial examination, $60 for her two July office visits ($30 each), $30 for a discharge examination, $250 for eight physical therapy treatments ($25 each) and $250 for x-rays. The highest amount substantiated by the record for Russ's pain and suffering is $1,500.
For the reasons assigned, the judgment of the trial court is amended to reflect a damage award of $2,150. The parties are to bear their own costs.
AFFIRMED AS AMENDED.
NOTES
[1] Dr. Evans testified that it is more convenient and practical, "in terms of [his] management and [his] assessment of [patients who have been involved in 2 incidents of trauma] to have those things considered in separate charts." He also "felt that there were enough features related to separating one accident as [opposed] to the next, that they could be considered in separate files."
[2] Dr. Evans confirmed he did not examine or treat Russ twice on the dates which appear on both invoices.
[3] Dr. Evans' practice of double billing for Russ's office visits and physical therapy sessions also undermined his proof of costs. Patients are charged per visit or per therapy session, not according to the number of causes for their ailments.