620 So.2d 315 (1993)
Alfredo PEREIRA and Maria Braswell
v.
The LOUISIANA COCA-COLA BOTTLING CO., et al.
No. 92-CA-1369.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 1993.
Rehearing Denied July 20, 1993.
*316 Joseph L. Waitz, Waitz & Downer, Houma, and Catherine Smith, Simmons & Associates, New Orleans, for plaintiff, Alfredo Pereira.
David K. Persons, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendants.
Before BARRY, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
This appeal arises from a vehicular collision on June 29, 1989 in which the plaintiff, Alfredo Pereira's, vehicle was rear-ended by the defendant, Louisiana Coca-Cola Bottling Co.'s, truck. The truck was being driven by one of defendant's employees. At trial, liability was stipulated. The only issue put to the jury was the question of damages. After a jury trial on the merits, a judgment was granted in favor of the plaintiff awarding only property damages. The jury found that the plaintiff was not entitled to any damages for bodily injuries.
Plaintiff now appeals, seeking review of the jury's verdict denying damages for his bodily injuries. On appeal, the plaintiff assigns the following errors:
(1) The jury was manifestly erroneous in following the opinions of the defendant's medical experts over the testimony of the plaintiff's treating physician; and
(2) The trial court erred in allowing defendant's neurologist to testify as to matters exceeding the scope of his expertise.
The evidence adduced at trial revealed that in 1984 the plaintiff was injured in an offshore accident on a drilling rig. Specifically, the plaintiff fell out of his bunk bed and hit his back on a nearby chair. He had been working on the rig only six or seven days when the accident occurred. The plaintiff was treated for injuries sustained in this prior accident by Dr. John Watermeier. Dr. Watermeier did not testify at trial. However, his records were introduced into evidence and referred to by the defendant's experts. Dr. Watermeier's records show that the plaintiff had longstanding complaints of back pain since the rig accident in 1984, and subsequently underwent a lumbar laminectomy in 1987. By 1988 and 1989, the plaintiff had begun complaining of neck and upper extremity problems. In March 1989, Dr. Watermeier suggested that the plaintiff undergo an anterior cervical discectomy and fusion. The plaintiff agreed and Dr. Watermeier sought to get the plaintiff cleared for surgery. Dr. Watermeier was still trying to get the plaintiff cleared for the cervical fusion on June 14, 1989, only fifteen days prior to the present accident.
The plaintiff first sought medical attention for his alleged injuries from the present *317 accident on July 24, 1989 when he went to Dr. Watermeier. Since there was a new accident, Dr. Watermeier's office apparently refused to see the plaintiff without some specific form of guaranty of payment from either the plaintiff himself or the plaintiff's attorney.
The plaintiff eventually received medical treatment from Dr. William Kinnard, an orthopedist, on August 2, 1989. On this initial visit, the plaintiff informed Dr. Kinnard that he had pain in his neck, left arm, and shoulders, and had suffered with headaches since the accident. He also complained of numbness in his left arm and hand. The plaintiff also told the doctor that he had no problems with his spine prior to the present accident. An MRI performed on August 3, 1989 revealed evidence of disc bulges or herniation at the C4, C5, C6, and C7 levels. The MRI also revealed evidence of the prior surgery performed by Dr. Watermeier and bulging discs at various levels, including L1, L2, L3 and L5.
While under Dr. Kinnard's care, the plaintiff underwent an anterior cervical discectomy and fusion at the C6-7 level (the same surgery recommended by Dr. Watermeier) on November 12, 1989. The plaintiff also had a laminectomy performed on February 5, 1990. During the laminectomy, scar tissue was removed at the L4 level and an extremely large herniated disc was removed at the L1 level.
At trial, Dr. Kinnard testified that the abnormality which existed at the C4-5, and C6-7 levels was predominantly the same degree of abnormality which existed prior to the present accident. However, the accident worsened the condition, and it was the aggravation of the condition which necessitated the surgery.
Upon cross-examination, Dr. Kinnard acknowledged that the plaintiff had not informed him that he had been treated previously by Dr. Watermeier. In fact, Dr. Kinnard had not seen any of Dr. Watermeier's records on the plaintiff's treatment until the morning of trial. Dr. Kinnard testified that based on Dr. Watermeier's records, the plaintiff's problems had been ongoing, and that the accident did not cause the damage to the disc at the C6-7 level. Dr. Kinnard also stated that the plaintiff's problem at the L4-5 level was primarily due to scarring which had occurred from the prior surgery. He acknowledged that the scarring is a natural part of the healing process. Dr. Kinnard further stated that while there was a bulging disc at the L1 level prior to the accident, the accident may have caused the disc to become herniated, requiring surgery. In addition, the doctor noted that the normal degenerative changes in the plaintiffs back could have been aggravated by the accident.
At trial, the plaintiff also relied upon the testimony of Dr. Joseph Graffagnino, a urologist, who had seen the plaintiff for sexual impotence problems. The doctor first saw the plaintiff on March 6, 1991 at which time the plaintiff informed the doctor that he had begun experiencing problems in November of 1990 and had no such problems prior to the accident. After performing several tests, Dr. Graffagnino diagnosed the problem as organic sexual impotence. The doctor stated that lumbar spine injuries can cause sexual impotence, and opined that plaintiff's lumbar problems were responsible for the plaintiff's sexual impotence. However, Dr. Graffagnino, acknowledged that organic sexual impotence can also result from diabetes, and a number of other illnesses.
To refute the plaintiff's allegations that the accident caused his sexual impotence problems, the defendant relied upon the testimony of Dr. Neil Baum, a urologist. Dr. Baum did not examine the plaintiff but reviewed all of the plaintiff's medical records. Part of these medical records included the records from Terrebonne General Medical Center where the where the plaintiff had undergone the anterior cervical fusion in 1989 and lumbar laminectomy in 1990. Included in the records from Terrebonne General were the admission forms which indicated that the plaintiff was a borderline diabetic. (The medical records from Terrebonne General Medical Center was introduced into evidence by the plaintiff as plaintiff's exhibit 1A.) In light of these records, Dr. Baum opined that the plaintiff's diabetes was the cause of his sexual impotence.
*318 Dr. Donald Adams, a neurologist, also testified on behalf of the defendant. Dr. Adams acknowledged that he had not examined the plaintiff but had reviewed all of the plaintiff's medical records, including Dr. Watermeier's records. Upon review of these records, it was Dr. Adam's opinion that the plaintiff's lumbar and cervical spine problems were not caused or aggravated by the auto accident of 1989.
Dr. Watermeier's records revealed, in addition to the surgery at the L4-5 level and the recommendation for an anterior cervical fusion, bulging discs at the L1-2 levels and degenerative changes at the L3, 4, and L5 levels.
By his first assignment of error, the plaintiff contends that the jury was manifestly erroneous in giving greater weight to the testimony of the defendant's medical experts and finding that the plaintiff's injuries were not caused or aggravated by the present accident. An appellate court may not set aside a trial court's findings of fact in the absence of "manifest error" or unless it is "clearly wrong" and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Cantor v. Koehring, 283 So.2d 716 (La.1973).
Where the factual findings are based upon determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings. Only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Cantor, supra at 724; Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987); Boulos v. Morrison, 503 So.2d 1 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999 (La.1986). Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990); Thompson v. Tuggle, 486 So.2d 144 (La.App. 3rd Cir.1986), writ denied, 489 So.2d 919 (La.1986). Additionally, where a factfinder's holding is based on its decision to credit the testimony of one or more witnesses, the finding can virtually never be manifestly erroneous or clearly wrong. Rosell, supra at 845; AMKU Trust v. Talley, 580 So.2d 1116 (La.App. 4th Cir.1991).
The plaintiff is correct that the testimony of a treating physician should be accorded more weight and probative value than that of a physician who has only seen the injured party for purposes of rendering expert testimony concerning the party's condition. Streeter v. Sears, Roebuck & Co., Inc., 533 So.2d 54 (La.App. 3rd Cir. 1988), writ denied, 536 So.2d 1255 (La. 1989); Kay v. Home Indemnity Company, 313 So.2d 303 (La.App. 3rd Cir.1975). However, for expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record. Russ v. Jones, 580 So.2d 1098 (La. App. 4th Cir.1991). In the present case, we have a situation where the treating physician was not fully informed of the plaintiff's prior injuries and medical care rendered by Dr. Watermeier. In fact, Dr. Kinnard testified that the plaintiff did not inform him of any treatment rendered by Dr. Watermeier. Dr. Kinnard's first notice of the laminectomy performed by Dr. Watermeier was when Kinnard reviewed the results of the x-rays and MRI performed on the plaintiff on August 3, 1989 which showed scarring from the prior surgery.
Defendant's experts, prior to testifying, reviewed all of the plaintiff's medical records, including Dr. Kinnard's records. Plaintiff's treating physician, Dr. Kinnard, acknowledged that he had not reviewed all of Dr. Watermeier's records. In fact, Dr. Kinnard testified that he first saw Dr. Watermeier's records the morning of the trial. Thus, the jury was well within its discretion in concluding that the defendant's experts were more informed of the plaintiff's prior medical condition than Dr. Kinnard and were in a better position to determine if the present accident caused or aggravated the plaintiff's prior injuries. Accordingly, *319 the jury was not manifestly erroneous in giving more weight to testimony elicited from Drs. Baum and Adams.
By his second assignment of error, the plaintiff argues that the trial court erred in allowing Dr. Adams to testify beyond the scope of his expertise. Specifically, plaintiff's counsel objected at trial when the trial court allowed Dr. Adams to testify concerning plaintiff's complaints of sexual impotence. The trial judge asked Dr. Adams whether it was within his realm of expertise to discuss the nerves which affect the erection mechanism. Dr. Adams responded that a urologist would refer a patient to a neurologist when there are complaints of impotence. The trial court then overruled the plaintiff's objection and allowed Dr. Adams to testify. Dr. Adams then went on to testify concerning the possibilities and consequences of a neurologic basis for organic sexual impotence.
The trial court has great discretion in deciding which witnesses are qualified as experts, and the breadth and scope of expert testimony. La.C.E. article 702 Comment (d); Armstrong v. Lorino, 580 So.2d 528 (La.App. 4th Cir.1991), writ denied, 584 So.2d 1166 (La.1991). This Court in Adams v. Chevron USA, Inc., 589 So.2d 1219 (La.App. 4th Cir.1991), writs denied, 592 So.2d 414, 415 (La.1991) adopted the standard for determining the admissibility of expert testimony enunciated by the United States Fifth Circuit Court of Appeal in Christopher v. Allied-Signal Corp., 939 F.2d 1106 (5th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992):
(1) Whether the witness is qualified to express an expert opinion;
(2) Whether the facts on which the expert relies are the same type as are relied upon by other experts in the field;
(3) Whether in reaching his conclusion the expert used well-founded methodology, and;
(4) assuming the expert's testimony passes these tests, whether the testimony's potential for unfair prejudice substantially outweighs its probative value under the relevant rules.

Adams, supra at 1223.
In the present case, there is no question that Dr. Adams was qualified to express an expert opinion. The issue which the plaintiff raises is whether the physician went beyond the scope of his expertise when he testified concerning the possible causes of plaintiff's sexual dysfunction. A review of the testimony elicited from the doctor indicates that the witness did not go beyond his expertise. Defense counsel questioned Dr. Adams about the possibility that plaintiff's sexual impotence could have a neurological basis, and the corresponding symptomology if the plaintiff's impotence did have a neurological basis. As Dr. Adams is a neurologist, and was qualified as an expert in neurology by the court, such testimony was clearly within the scope of his expertise. The trial court did not commit any error in allowing Dr. Adams to testify on these matters.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.