| THIBODEAUX, Judge.
In this personal injury case involving a rear-end vehicular collision where liability for causing the accident was stipulated, the plaintiff, Iris Miller, who was sixty-three years old at the time of trial, appeals the judgment of the trial court pursuant to a jury verdict. Ms. Miller contends the jury abused its discretion by failing to award the full amount of her past medical expenses of $17,689.37 as stipulated by the parties and instead awarding only $865.95. Ms. Miller further contends that the trial court abused its discretion in failing to award any amount for future medical expenses and in awarding $2,500.00 general damages.
For the following reasons, we find that the jury abused its discretion in its award of $865.95 for Ms. Miller’s past medical expenses and amend to increase her award to $17,689.37, the amount stipulated by the parties. We affirm the jury’s decision not to award Ms. Miller any amount for future medical expenses and amend its award of general damages to increase this amount from $2,500.00 to $75,000.00.
I.

ISSUES

The issues in this case involve damages. We must decide whether the jury erred in failing to award to Ms. Miller the full amount of her past medical bill and in refusing to award any amount for her future medical expenses. Ms. Miller also claims that the amount awarded to her by the jury for general damages, $2,500.00, is abusively low.
JiL

FACTS

There is no dispute that at approximately noon on Saturday, August 15, 1998, Ms. Miller and Eric Clout were involved in a motor vehicle accident. As Ms. Miller waited to turn left in the left turning lane at the intersection of Pinhook and Verot School Road in Lafayette, Louisiana, Clout, while in the course and scope of his employment with Baker Hughes Oilfield Operations (Baker Hughes), struck Ms. Miller from behind. The parties stipulated at trial that Baker Hughes, through its employee, Clout, was at fault in causing the accident.
Ms. Miller was taken from the scene of the accident by ambulance to Lafayette General Medical Center where she was treated and released. The night of the accident, Miller testified that she woke up in “excruciating pain.” She called the *375 emergency room at Lafayette General and was told to call her regular doctor in the morning. During the five days after the accident, Ms. Miller testified that she suffered from terrible pain in her head, neck, shoulders and arms. Ms. Miller described the pain as occurring mostly on her left side. She also stated that the pain was so intense that she was barely able to move from her bed, that she was unable to eat very much or take baths. To alleviate the pain Ms. Miller took over-the-counter pain medication she had in her home.
One month after the accident on September 15, 1998, Ms. Miller went to Dr. Lyons, an internist and her regular physician, because of her continued pain. Ms. Miller did not explain the reason for her delay in seeing Dr. Lyons. On October 6 and 8, 1998, Ms. Miller went to the office of Dr. Narinder Gupta, an anesthesiologist and a doctor she was seeing for pain prior to the August 15, 1998 accident. She did not see the doctor on those days and did not relate to his staff that |sshe had been in a car accident two months earlier. Ms. Miller saw Dr. Gupta on October 15, 1998. On that date she told Dr. Gupta about her accident. Dr. Gupta testified that Ms. Miller presented with complaints of left neck and shoulder pain, headache, and tingling in her left arm as well as pain in her lower back.
Dr. Gupta’s examination revealed that Ms. Miller had unequal pelvic levels, compromised lumbar range of motion, parethe-sia of the left arm, markedly restricted cervical range of motion, palpable tenderness and exquisite spasm of her trapezium and scapulae bilaterally. Dr. Gupta also found that Ms. Miller’s rhomboid muscles were involved in causing her problems on both the right and left side of her back, but that the problems were greater on the left side. He also found that Ms. Miller’s neck muscle problems were greater on the left. Ms. Miller suffered from decreased abduction and extension of her left and right arms, with greater problems on thé left and tenderness on both sides of her back due to problems with her sacroiliac joint. Dr. Gupta recommended that Ms. Miller receive trigger point injections.
Dr. Gupta saw Ms. Miller five more times in October, 1998. In all, after the accident, Ms. Miller saw Dr. Gupta seventy-nine times from October 15, 1998 through May 2001. Dr. Gupta testified that initially a patient with serious pain should have treatment two to three times per week to break the pain cycle. An MRI ordered on October 26, 1999, came back normal although Ms. Miller continued to complain about numbness and tingling in her arms. Dr. Gupta testified that just because Ms. Miller’s test came back negative does not mean she is not experiencing pain. Although Ms. Miller had a stroke six months after the accident, Dr. Gupta said that the treatment he administered to her during the seventy-nine visits was related to the motor vehicle accident of August 15,1998.
|4On August 5, 1999, Ms. Miller filed a petition seeking damages from the defendants for the injuries she suffered as a result of the accident of August 15, 1998. This matter was tried before a jury on October 15, 16, and 17, 2001. At the conclusion of trial, the jury rendered a judgment awarding general damages in the amount of $2,500.00, past medical expenses in the amount of $865.95, and no future damages. From this judgment, Ms. Miller filed the present appeal.
III.

LAW AND DISCUSSION

Ms. Miller contends that the damages awarded to her by the trial court are abusively low, and that the failure to *376 award any amount for future medical expenses was not justified.
The standard for an appellate court’s review of damages was well established in Reck v. Stevens, 373 So.2d 498 (La.1979) and was confirmed in Youn v. Maritime Overseas, Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Suffice it to say, we will not disturb a trial court’s award of damages unless we find that the award constitutes an abuse of the trial court’s discretion. After carefully reviewing the record, we find that the trial court abused its discretion in failing to award Ms. Miller the full amount of her past medical expenses and in assessing general damages.
Dr. Gupta, Ms. Miller’s treating physician, clearly testified that before the August 15, 1998 accident, the majority of Ms. Miller’s complaints involved the right side of her body. After the accident, Ms. Miller’s complaints and problems involved the left side of her body. A treating physician’s testimony should be accorded more weight and probative value than that of a physician who has only seen the injured party for purposes of rendering expert testimony concerning the party’s 15condition. Pereira v. Louisiana Coca-Cola Bottling Co., 620 So.2d 315 (La.App. 4th Cir.), writ denied, 629 So.2d 414 (La.1993) and Streeter v. Sears, Roebuck & Co., Inc., 533 So.2d 54 (La.App. 3rd Cir. 1988), unit denied, 536 So.2d 1255 (La. 1989). For an expert opinion to be valid and to merit much weight, it must be based on facts that are substantiated by the record. Pereira, 620 So.2d at 318 and Russ v. Jones, 580 So.2d 1098 (La.App. 4th Cir.1991). “The trial court’s determination of an expert’s credibility is entitled to great weight and should not be overturned absent manifest error.” Id.
The defendants’ presented the testimony of Dr. Douglas Bernard, a specialist in orthopedic surgery who saw Ms. Miller at the defendants’ request, to rebut the opinion of Dr. Gupta that the motor vehicle accident caused and/or aggravated the pain Ms. Miller suffered. After an examination, Dr. Bernard felt that Ms. Miller’s neck, upper extremities and joints were normal. Dr. Bernard also found mild crepitus, or a “crunching noise,” when Ms. Miller’s right shoulder was moved. Dr. Bernard testified that Ms. Miller’s complaints of pain were diffuse. Dr. Bernard’s ultimate opinion regarding Ms. Miller’s condition was that she suffered from carpal tunnel syndrome which is a condition that is not caused by a one-time traumatic accident unless the wrist is fractured in the accident. Dr. Bernard explained that carpal tunnel syndrome is a condition that develops over time. Dr. Bernard had no opinion as to the cause of her pain in her neck and back as he explained carpal tunnel syndrome usually does not affect those areas of the body. Although it is clear that Ms. Miller treated with Dr. Gupta for an extensive amount of time, Dr. Bernard barely recalled reviewing Dr. Gupta’s medical records with respect to his diagnosis and treatment of Ms. Miller.
IfiDr. Bernard further testified that if a patient he saw prior to an accident came to him after an accident and essentially had the same complaints, he would not attribute the post-accident problems to the accident. However, in the present case, Dr. Gupta testified that Ms. Miller’s complaints of pain were not the same pre-accident. On cross examination, Dr. Bernard testified that he did not mean to imply that Ms. Miller was not injured in the August 15, 1998 accident, only that the accident did not cause radiculopathy or “radiating pain down her arm or leg ... caused by some kind of disc” problem. Dr. Bernard also admitted that MRIs are *377 only eighty-five percent accurate. Dr. Gupta suggested that Ms. Miller undergo more testing that could more clearly reveal her problem. However, Ms. Miller was unable to do so because she was undergoing coumadin therapy which precluded conducting an EMG.
As expected, there was conflicting medical expert testimony. It is clear that the jury did not give much weight to the testimony of Ms. Miller’s treating physician. We find manifestly erroneous the jury’s decision to give Dr. Bernard’s testimony greater weight than Dr. Gupta’s. Dr. Bernard, the defendants’ witness, saw Ms. Miller one time at the request of the defendants for purposes of rendering expert testimony concerning Ms. Miller’s condition. At trial, Dr. Bernard admitted that he could not recall the medical records he reviewed. He testified that he “thought she did see Dr. Gupta.” If Dr. Bernard actually reviewed Ms. Miller’s medical history, he would have known that not only was she seen by Dr. Gupta, but that he had been her treating physician for several years. Dr. Bernard also would have known that Ms. Miller’s complaints of pain to Dr. Gupta were different after the accident. Thus, we further find that the jury’s failure to award Ms. Miller the entire amount of her past medical expenses of $17,689.37 was an abuse of discretion. Likewise, we find that the jury’s award of $2,500.00 in general damages is abusively low.
|7Pr. Gupta and Ms. Miller testified about the excruciating pain she has endured since the accident. Dr. Gupta further testified that he found no reason to doubt Ms. Miller’s complaints of pain, and that she was a believable patient. We find nothing in the record that contradicts Dr. Gupta and Ms. Miller’s testimony about her pain. Therefore, we increase the amount of the general damages award to $75,000.00 to reflect the pain and suffering Ms. Miller has endured as revealed by the record.
“Future medical expenses by their nature are incapable of precise measurement. Thus, much discretion shall be left to the trial court for the reasonable assessment of those damages.” Knabel v. Lewis, 00-1464, p. 4 (La.App. 1 Cir. 9/28/01); 809 So.2d 314, 317, writ denied, 01-2892 (La.3/8/02); 811 So.2d 886; La. Code Civ.P. art.1999. In Stiles v. K Mart Corp., 597 So.2d 1012, 1013 (La.1992), the supreme court addressed the issue of future medical expenses and stated:
When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required.
“When the need for future medical care has been demonstrated but cost is not susceptible of determination, the court may make a reasonable award.” Gagnard v. Zurich American Ins. Co./Assur. Co. of America, 02-19 (La.App. 3 Cir. 6/12/02); 819 So.2d 489, 495, citing Cole v. State ex rel. Dept. of Transp. & Dev., 99-912 (La. App. 3 Cir. 12/22/99); 755 So.2d 315, writ denied, 00-0199 (La.4/7/00); 759 So.2d 766.
Dr. Gupta testified that Ms. Miller’s pain was chronic. Dr. Gupta took into consideration Ms. Miller’s age when he opined that she will continue to have pain problems with her back, shoulders and arms. Dr. Gupta concluded that Ms. Miller would continue to need pain management therapy — trigger point injections, Cheat application, and medication — for the *378 rest of her life. Dr. Gupta estimated the cost of such therapy to be $300.00^450.00 per month. We find that the whole of medical testimony produced sufficient evidence of the need for future medical care for the rest of Ms. Miller’s life. However, although Dr. Gupta testified regarding the cost per month of Ms. Miller’s future medical care, it is speculative to predict Ms. Miller’s lifespan. Damages for future medical expenses are special damages, which can be established to a reasonable mathematical certainty or with relative certainty, though not necessarily precisely. Wainwright v. Fontenot, 00-0492 (La. 10/17/00); 774 So.2d 70. The record does not reflect evidence of Ms. Miller’s life expectancy; thus, it would be mere speculation to assess the cost of Ms. Miller’s future medical care. Further, we cannot take judicial notice, pursuant to La.Code Evid. arts. 201 and 202, of the United States Department of Labor Life Expectancy Chart because a person’s life expectancy involves factors other than mere age that can be disputed. In Veazey v. State Farm Mutual Auto Ins., 587 So.2d 5, 8 (La.App. 3 Cir.1991), we said “An award for future medical expenses cannot be based on mere speculation of the jury.” Therefore, the jury did not err in failing to award Ms. Miller future medical expense damages.
IV.

CONCLUSION

For the reasons assigned, we affirm the trial court’s judgment insofar as it denied the plaintiff, Iris Miller, damages for future medical expenses, awarded her general damages and past medical expense damages. However, we amend and recast the trial court judgment so as to increase the quantum of the general damages and past medical expenses awards in favor of Iris Miller and against the defendants, Baker Hughes Oilfield Operations, Inc. and its insurer, National Union Fire Insurance 1 flCompany, to $75,000.00 and $17,689.37, respectively. Finally, it is ordered that costs in this case, both at the trial court level and on appeal, are to be borne by the defendants, Baker Hughes Oilfield Operations, Inc. and its insurer, National Union Fire Insurance Company.
AMENDED IN PART, REVERSED IN PART, AND RENDERED.