857 So.2d 458 (2003)
Iris MILLER,
v.
Eric D. CLOUT, III, et al.
No. 2003-C-0091.
Supreme Court of Louisiana.
October 21, 2003.
*459 Henry A. King, Timothy S. Madden, Bryan J. DeTray, New Orleans, King, LeBlanc & Bland; Randall L. Menard, Hill, Beyer & Menard, for Applicant.
Thomas R. Galloway, Jr., Galloway & Jeffcoat, for Respondent.
PER CURIAM.
We granted certiorari in this case to consider whether the court of appeal erred in amending the judgment of the district court to increase the jury's award to plaintiff for past medical and general damages.

UNDERLYING FACTS AND PROCEDURAL HISTORY
This case arises from an automobile accident which occurred on August 15, 1998. *460 Plaintiff, Iris Miller, was stopped in the left turn lane when her car was struck from behind by a pickup truck owned by Baker Hughes Oilfield Operation ("Baker Hughes") and driven by its employee, Eric Clout.
Subsequently, plaintiff filed the instant suit against Mr. Clout, Baker Hughes and its insurer, National Union Fire Insurance Company, and the case proceeded to a trial by jury. The parties stipulated at trial that Baker Hughes, through its employee, Mr. Clout, was at fault for the accident; therefore, the trial focused on plaintiff's damages.
Plaintiff testified at trial that after the accident, she was "dazed or in shock." She was taken from the scene by ambulance and brought to the emergency room of a local hospital. At the emergency room, doctors took x-rays and gave her medication for pain. She was sent home later that afternoon.
Plaintiff testified that for five days after the accident, she experienced severe headaches and pain which started at the back of her skull, radiating down into her neck and shoulders. To relieve her discomfort, she took over-the-counter pain medication.
One month after the accident, on September 15, 1999, plaintiff made an appointment to see her regular doctor, Dr. Edward Lyons, because of her continued pain. Plaintiff could not explain why she did not see Dr. Lyons earlier and conceded she may not have informed Dr. Lyons she was involved in an accident. Dr. Lyons diagnosed her with high blood pressure, which may cause headaches.
Approximately two months after the accident, plaintiff saw Dr. Narinder Gupta, an anesthesiologist specializing in chronic pain management. Plaintiff testified she had been treated by Dr. Gupta several months prior to the accident for a problem with her right shoulder, which he believed was a rotator cuff tear. Dr. Gupta gave her various treatments, including trigger point injections, steam packs and mechanical traction. At the time of trial, she had treated with him approximately twice a week for a total of seventy-nine visits.
The testimony of Dr. Gupta was presented to the jury via videotape. Dr. Gupta explained that because plaintiff was a chronic pain sufferer, she was more susceptible to an injury or aggravation, and that all the treatment he provided subsequent to the accident is causally related to the accident. He described plaintiff's pain complaints after the accident as being different in "geographical distribution," region and intensity and pointed out she had more symptomology, especially in her back, than when she originally sought treatment prior to the accident in January 1998. He pointed out when she first sought treatment, her complaints of pain were concentrated on the right side of her body, but after the accident she began experiencing pain to the left side of her body.
According to Dr. Gupta, when plaintiff first presented to him after the accident, she had an unequal pelvic level, suggesting a compensation for pain or muscle spasms. Dr. Gupta testified plaintiff's cervical spine examination revealed she had paresthesias, i.e., "pins and needles" or tingling of the left arm, a marked tenderness, stiffness and compromised/limited range of motion causing aching and severe pain. She had palpable tenderness and exquisite myofascial (muscle) spasms of the right and left shoulders and levator scapulae bilaterally, which inhibits or compromises raising of her arms, with greater difficulty on the left. This situation caused headaches and muscle spasms in the left and right sacroiliac joint. Dr. Gupta noted plaintiff's range *461 of back motion is significantly compromised as well as pain in both her legs and pain in the sacroiliac joint.
Approximately one year after plaintiff began her post-accident treatment, Dr. Gupta ordered an MRI. The MRI showed no abnormalities, however, he testified that merely because her x-rays, MRI and other tests came back negative does not indicate plaintiff did not have chronic pain.
Dr. Gupta testified plaintiff's myofascial spasms could also be aggravated by the weather, physical and emotional stress, flu, trauma and "overdoing it." He observed she had a great deal of emotional stress in her life. Dr. Gupta also conceded the numbness or tingling in plaintiff's arms could be the result of carpal tunnel syndrome, which she has admitted was not caused by the accident.
Dr. Gupta acknowledged his records reflected that by December 1998, approximately four months after the accident, plaintiff advised him she was "feeling much better" and that she "had a great Thanksgiving." He also admitted receiving a letter from plaintiff written in January 1999 in which she wrote his treatments "have brought me to where my life is a pleasure again." However, Dr. Gupta cautioned chronic pain suffers like plaintiff have a different "baseline" because they live with pain and when she stated she was doing "well," she did not necessarily mean she was pain free.
Dr. Gupta testified he had no reason to doubt plaintiff was experiencing pain and that she was a believable patient. He explained her pain was chronic and she would continue to have pain and require pain management treatment for the remainder of her life, at a cost of approximately $300-$450 a month, consisting of "trigger-point" injections, heat and ice therapy, massage therapy, modalities (moist hot packs and traction), stretching exercises, and medications.
Defendants presented the videotaped testimony of Dr. Douglas Bernard, an orthopedic surgeon who had conducted an examination of plaintiff at defendants' request. Dr. Bernard testified he found plaintiff's neck, upper extremities, joints, shoulders, elbows and wrists normal. He found no spasms, but noted plaintiff had some mild "crepitus" or crunching noise when the joints moved in the right shoulder. He described plaintiff's complaints of pain as "diffuse," meaning she complained of pain "just about everywhere." He concluded plaintiff's complaints regarding her hands and arms were typical of carpal tunnel syndrome, which was not caused by the one-time traumatic accident; rather, these developed over time. Dr. Bernard testified he could not determine what was causing the radiating pain in her shoulders, neck, back and legs. He stated he would not have sent her to a pain management specialist because there were no objective findings as to what, if anything, was causing her pain. Dr. Bernard also testified that in his practice he had never seen anyone with chronic pain which lasted for more than three years.
Dr. Bernard disputed Dr. Gupta's opinion that the accident caused and/or aggravated plaintiff's pain, testifying there was no indication she suffered a major injury or aggravation from the accident. He stated any soft tissue injuries, such as muscle aches, pains or strains, would usually go away after a few weeks or months. Considering plaintiff's treatment by Dr. Gupta for several months prior to the accident, Dr. Bernard opined her complaints were pre-existing. He conceded it is possible the accident could have exacerbated her condition, but was skeptical because of plaintiff's normal MRI results. However, *462 he admitted he could not conclusively say plaintiff was not injured in the accident.
At the conclusion of the three-day trial, the jury rendered its verdict. The jury found plaintiff was injured by the August 15, 1998 accident. It awarded her general damages in the amount of $2,500 and past medical expenses in the amount of $865. The jury made no award for future medical expenses. The district court signed a judgment consistent with the jury's verdict.
Plaintiff appealed. The court of appeal amended the judgment of the district court to increase plaintiff's general damages award to $75,000 and her past medical expenses award to $17,689.37.[1]
Upon defendants' application, we granted certiorari to consider the correctness of that decision.[2]

DISCUSSION
The record reveals the jury was presented with two competing views of the evidence. Plaintiff relied on Dr. Gupta's testimony in support of her theory that the accident caused her to suffer significant pain on her left side, which she did not have prior to the accident and which remained unresolved at the time of trial. By contrast, defendants relied on the testimony of Dr. Bernard to demonstrate that plaintiff's complaints were largely pre-existing, and any injuries she may have sustained as a result of the accident were resolved by the time of trial. The jury obviously accepted the position advanced by defendants and awarded damages consistent with a relatively minor injury.
The court of appeal found the jury was manifestly erroneous in giving Dr. Bernard's testimony greater weight than Dr. Gupta's testimony.[3] We find the court of appeal erred.
A trial court's finding of fact may not be reversed absent manifest error or unless clearly wrong. Stobart v. State of Louisiana, Through Department of Transportation and Development, 617 So.2d 880 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*463 Applying this jurisprudence, we cannot say the jury was manifestly erroneous in accepting the testimony of Dr. Bernard over the testimony of Dr. Gupta. Although Dr. Bernard examined plaintiff on only one occasion, his finding that plaintiff suffered no major injury from the accident was corroborated by objective evidence, such as plaintiff's MRI and x-ray results. Additionally, Dr. Gupta acknowledged that approximately four months after the accident, plaintiff told him she was feeling "well," and by January 1999, she wrote a letter indicating "life was a pleasure again." The jury also heard plaintiff's own testimony concerning her injuries, and was in a superior position to observe the nuances of her demeanor which are not revealed in a cold record. In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47; Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206. Considering all these factors, we cannot conclude the jury's findings are unreasonable.
Having found no manifest error in the jury's factual findings, we now consider whether the court of appeal erred in increasing the award to plaintiff for general damages and past medical expenses. In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), we explained that an appellate court should rarely disturb a general damage award:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
As noted earlier, the jury's general damage award of $2,500 is consistent with the evidence developed at trial which suggested any injury plaintiff sustained as a result of this accident was minor in nature and was resolved soon after the accident. Having considered the record, we cannot say the jury's award was below what a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances of this case.
Likewise, the jury's award of past medicals in the amount $865 is reasonable. This amount, representing the costs of plaintiff's ambulance transportation following the accident ($459) and emergency room costs ($406), is consistent with the evidence which indicates plaintiff suffered only minor injuries from the accident.
In sum, we conclude the court of appeal erred in disturbing the judgment of the district court. Accordingly, insofar as the judgment of the court of appeal amended the judgment of the district court, that judgment is reversed and the judgment of the district court is reinstated.

DECREE
For the reasons assigned, the judgment of the court of appeal insofar as it amended the judgment of the district court is reversed. The judgment of the district court is reinstated in its entirety. All costs in this court are assessed to plaintiff.
NOTES
[1] Miller v. Clout, 02-540 (La.App. 3rd Cir. 10/30/02), 832 So.2d 372.
[2] Miller v. Clout, 03-0091 (La.3/28/03), 842 So.2d 1081.
[3] In its opinion, the court of appeal relied on a jurisprudential doctrine developed in the appellate courts which indicates the testimony of a treating physician should be accorded greater weight than the testimony of a physician who has only seen the party for purposes of rendering an expert opinion concerning the party's condition. See Pereira v. Louisiana Coca-Cola Bottling Co., 620 So.2d 315 (La. App. 4th Cir.), writ denied, 629 So.2d 414 (La.1993). However, courts applying that doctrine have held the treating physician's testimony is not irrebuttable, as the trier of fact is required to weigh the testimony of all the medical witnesses. Freeman v. Rew, 557 So.2d 748, 751 (La.App. 2nd Cir.1990). Thus, reduced to its essentials, the inquiry is whether, based on the totality of the record, the jury was manifestly erroneous in accepting the expert testimony presented by defendants over that presented by plaintiff.