959 So.2d 926 (2007)
Brenda G. BREITENBACH
v.
Robert A. STROUD, John Doe, Hartford Casualty, Safeway Insurance Company of Louisiana and XYZ Insurance Company.
No. 2006 CA 0918.
Court of Appeal of Louisiana, First Circuit.
February 9, 2007.
*929 Georgia G. Turgeau, Tammy N. Nick, Slidell, Counsel for Plaintiff/Appellant, Brenda G. Breitenbach.
Michael L. Stewart, John J. Erny, III, Metairie, Counsel for Defendants/Appellees, Robert A. Stroud, Shannon Dowden on behalf of the Minor Matthew Corey and The Hartford Insurance Company.
Frederick H. Dwyer, Metairie, Counsel for Defendant/Appellee, State Farm Mutual Insurance Company.
Before: CARTER, C.J., WHIPPLE and McDONALD, JJ.
*930 WHIPPLE, J.
This matter is before us on appeal from a judgment of the trial court granting a directed verdict, dismissing plaintiff's claim of negligent entrustment against Robert A. Stroud, and dismissing her claims against the remaining defendants with prejudice in conformity with the jury's verdict. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
On August 30, 2001, plaintiff, Brenda G. Breitenbach, was traveling on Brown Switch Road in Slidell, Louisiana, when the passenger side of her vehicle was hit by a vehicle driven by Matthew Corey, who was exiting the Winn Dixie parking lot onto Brown Switch Road. Corey, who was fifteen years old and did not possess a valid driver's license, was driving a vehicle owned by his grandfather, Robert A. Stroud.
On August 29, 2002, plaintiff filed suit, naming as defendants: Stroud, Shannon Dowden, Matthew Corey's mother and legal custodian, and various insurers, alleging that she sustained injuries and damages as a result of the accident. She also asserted a claim against Stroud for negligent entrustment of his vehicle to his grandson.
The matter was tried before a jury on August 1-4, 2005. At the conclusion of trial, the jury returned a verdict finding that plaintiff was not injured as a result of the August 30, 2001 accident. Accordingly, the jury did not award plaintiff any damages. Judgment was rendered in conformity with the jury's verdict dismissing plaintiff's claims against Dowden, Stroud, Hartford and State Farm. The judgment also dismissed plaintiff's claim of negligent entrustment against Stroud, in accordance with the directed verdict granted by the trial court.
Plaintiff appeals, challenging evidentiary rulings of the trial court, the grant of a directed verdict dismissing her claim for negligent entrustment, and the jury's finding that she was not injured as a result of the accident.

DISCUSSION

EVIDENTIARY CHALLENGES

(Assignments of Error Nos. 1, 2, 4, 5, and 6)
In these assignments, plaintiff contends that the trial court made various erroneous evidentiary rulings. If a trial court commits evidentiary error that interdicts its fact-finding process, this court must conduct a de novo review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review. Wright v. Bennett, XXXX-XXXX (La.App. 1st Cir.9/28/05), 924 So.2d 178, 182.
Plaintiff contends that the trial court committed legal error: (1) in failing to admonish the jury to disregard defense counsel's improper and erroneous remarks during opening statements, which mischaracterized the evidence; (2) in allowing defendants to question plaintiff about her criminal conviction and the details of her crime; (3) in denying plaintiff's motion to strike and/or limit the testimony of HUB Enterprises and the surveillance videotape offered by the defendants and failing to timely admonish the jury to disregard Stroud's remarks; (4) in denying plaintiffs motion to strike and/or limit the expert testimony of Dr. David Aiken; and (5) in disallowing and/or limiting plaintiffs closing argument, specifically with regard to her units-of-time argument.

*931 Defense Counsel's Remarks During Opening Statements
Plaintiff contends that defense counsel's remarks during opening statements, referring to her treating physician as a "plaintiff-attorney's-supplied doctor" who was "set up and paid for by the plaintiff's first attorney," deliberately mischaracterized the evidence. We note, however, that plaintiff's counsel did not object to these remarks at trial. Accordingly, plaintiff's failure to object constitutes a waiver of the right to raise this issue on appeal. Sims v. Ward, XXXX-XXXX (La. App. 1st Cir.6/9/06), 938 So.2d 702, 709, writ denied, 2006-2104 (La.11/17/06), 942 So.2d 535.
Plaintiff further contends that statements by defense counsel that plaintiff was "hit in the head with a brick" in an altercation were inaccurate and that although the trial court ordered defense counsel to clarify the statements, it should have admonished the jury to disregard all statements made by defense counsel. The record reflects that after this incident was mentioned twice by defense counsel, plaintiff's counsel objected to the accuracy of defense counsel's characterization of the incident. The trial court then instructed defense counsel to clarify the statement. Reading from the medical record, defense counsel responded, as follows:
So we will clarify. There is a question mark on the [medical] record as to whether it was a brick, but it was an altercation where she had some object pushed into her head so far that it fractured her eye socket and she fell to the ground and afterwards had neck pain, had shoulder pain. It says, question mark, brick here, whatever it was, it was strong enough to knock her to the ground and fracture her eye socket.
We note that the medical record from Slidell Memorial hospital was subsequently introduced into evidence without objection. Moreover, plaintiff testified and gave her version of the incident.
The test of whether argument of counsel is prejudicial or inflammatory is whether such comment is unreasonable or unfair in the eyes of the law. Cooper v. United Southern Assurance Company, 97-0250 (La.App. 1st Cir.9/9/98), 718 So.2d 1029, 1038. This test is balanced against the well-settled jurisprudence that counsel has great latitude in argument before a jury. This latitude is subject to regulation and control by the court who has a duty to confine argument within the proper bounds. Cooper v. United Southern Assurance Company, 718 So.2d at 1038. Moreover, the trial judge is vested with broad discretion in conducting trials in a manner that he determines will be conducive to justice. Jordan v. Intercontinental Bulktank Corporation, 621 So.2d 1141, 1150-1151 (La.App. 1st Cir.), writs denied, 623 So.2d 1335, 1336 (La.1993), reconsideration denied, 625 So.2d 1026 (La.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994). Further, an allegedly objectionable statement is subject to corrective measures. Sims v. Ward, 938 So.2d at 709.
We find no merit to plaintiff's argument. We note that the trial court instructed the jury prior to opening arguments that the arguments presented by the attorneys are not evidence and that their "determination of the facts must be based upon the testimony [they] hear and the other evidence that is submitted." Further, considering the clarification by defense counsel, the instructions of the trial court, and the testimony presented to the jury concerning the medical record, the statements made by defense counsel did not warrant any additional admonition from the trial court to disregard defense counsel's remarks. *932 Based on our thorough review of the record, we find that the instructions given by the trial court were more than sufficient to counter any purported inaccuracies by defense counsel in opening arguments.
Plaintiff further complains that defense counsel's statements to the jury that the defendants had been informed that morning that plaintiff did not plan to call plaintiff's treating physician, Dr. Reyes, were highly prejudicial and should have been excluded by the trial court or protective measures taken by the court to correct these statements, once made. After plaintiff objected to defense counsel "testifying what a doctor said at the deposition," the trial court ruled that the deposition would be allowed in evidence. Defense counsel then stated:
Mr. Stewart:
Okay, Dr. Reyes, Dr. Reyes will testify  he's in Europe and not available  that plaintiff didn't plan on calling him. This was a doctor that saw the plaintiff for 18 months and plaintiff wasn't going to call the doctor. We were told this morning he's unavailable, out of the country, and they are not going to call him. Well, we're going to call him because we took his deposition; so we will read that. It won't be quite as good because you won't see Dr. Reyes, but someone will be playing his part.
Based on our review of the record, including the transcript of counsels' sidebar discussions with the trial court, we are unable to say the statements made by defense counsel inaccurately reflected the circumstances surrounding the introduction of Dr. Reyes' testimony. Moreover, because counsel for plaintiff failed to raise an objection at trial on the basis now raised on appeal, she has waived her right to complain on appeal. Sims v. Ward, 938 So.2d at 709.
These assignments lacks merit.

Plaintiff's Prior Criminal Conviction
Plaintiff contends the trial court committed legal error in allowing evidence of plaintiff's guilty plea and felony conviction in April of 2004 for possession of a Schedule II narcotic to be submitted to the jury, on the basis that the probative value of such evidence is outweighed by the prejudicial effect it may have on the jury.[1]
In response to defense counsel's question to plaintiff asking if she had ever possessed medications that she did not have a prescription for or that were illegal, plaintiff replied, "marijuana, yeah." Plaintiff then admitted that she had been convicted of possession of a Schedule II narcotic.
Defendants argue that this line of questioning was proper for impeachment purposes and was conducted only after plaintiff testified, "I don't do a lot of drugs."
Louisiana Code of Evidence article 609, entitled "Attacking credibility by evidence of conviction of crime in civil cases," provides, in part:
A. General civil rule. For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted is admissible. However, evidence of the name of the crime of which he was convicted and the date of the conviction is admissible if the crime:
(1) Was punishable be death or imprisonment in excess of six months under the law under which he was convicted, *933 and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party; or
(2) Involved dishonesty or false statement, regardless of the punishment.
Because the felony was punishable by more than six months, evidence of the name of the crime for which plaintiff was convicted was clearly admissible pursuant to LSA-C.E. art. 609 for impeachment purposes.[2] Also, a thorough reading of plaintiff's testimony regarding the circumstances surrounding her conviction shows that after plaintiff admitted that she had been convicted of possession of a Schedule II narcotic, she was asked by defense counsel, "Would that be an illegal drug that you had in your possession?" Plaintiff responded, "It was my prescription and I got it back." Plaintiff then began to explain the details and circumstances surrounding her conviction, without objection from plaintiff's counsel.
Accordingly, we find no error by the trial court. Plaintiff's conviction for illegally possessing narcotic medication, which occurred during the time plaintiff was seeking medical treatment for injuries allegedly sustained as a result of this accident, was clearly relevant. Moreover, we find the probative value of this testimony is not substantially outweighed by the danger of any potential unfair prejudice towards plaintiff. Also, given plaintiff's decision to further explain and provide specific details, plaintiff can not now complain on this basis.
This assignment also lacks merit.

Motion to Strike and/or Limit Testimony of HUB Enterprises and the Surveillance Videotape
In this assignment, plaintiff contends that the trial court erred in denying plaintiff's motion to strike the video-taped surveillance of plaintiff offered by defendants and in failing to limit the testimony of the representative of HUB Enterprises.
Trial of this matter was scheduled to commence August 1, 2005. On July 7, 2005, plaintiff's counsel filed a motion to continue, stating that plaintiff "must have a cervical fusion surgery" and that it "shall take place within three (3) weeks." The trial court denied the motion to continue. On July 22, 2005, defendants filed a "Motion to List Additional Witness & Exhibit," to include as an additional witness Jason Gisclair, an investigator with HUB Enterprises, the firm retained by defendants to conduct surveillance of plaintiff, and as an additional exhibit, the video-taped surveillance of plaintiff taken July 19, 2005. On July 29, 2005, plaintiff filed a motion to strike any testimony by HUB Enterprises and all surveillance videotapes offered by defendants. At the commencement of trial on August 1, 2005, the trial court deferred ruling on the motion to strike until it had an opportunity to view the videotape outside the presence of the jury.
On August 3, 2005, after hearing argument by counsel, the trial court denied plaintiff's motion to strike and allowed the videotape to be shown to the jury. In doing so, the court stated:
Counsel, I've listened to [plaintiff's] testimony. I'm also aware that you made these tapes  there are three tapes, but only one I would consider allowing. And you made the tapes available to the plaintiff even before I believe we started trial; so it's not as though you are coming in at the end and attempting an ambush, I do not think.

*934 And considering the testimony as a whole, considering the questions that have arisen in the last several weeks with reference to her  the motion to continue, because of the surgery and all this sort of stuff, I think that the tapes are more probative than prejudicial and I will allow the tape to be shown to the jury.
On appeal, plaintiff complains that she received a copy of the videotape only one week prior to trial and was thereby deprived of the opportunity to conduct meaningful discovery regarding the integrity of the video-taped surveillance. She further contends that the videotape was irrelevant in that it depicts plaintiff engaging in activities and performing tasks that are not inconsistent with plaintiff's trial testimony as to what activities she is able and unable to perform. She also contends that the videotape was highly inflammatory and prejudicial to plaintiff as it shows plaintiff's trailer and unkempt lawn; focuses on a "City Motel" sign, rather than plaintiff; and shows plaintiff wearing "scantily clad" clothing.
Defendants counter that the surveillance was conducted in response to plaintiff's motion to continue filed less than one month before trial, wherein plaintiff, in seeking a continuance, contended that she "must have a cervical fusion surgery" and that it "shall take place within three (3) weeks." Because four years had already passed since the accident and surgery had not been recommended by any physician thus far, defendants requested the surveillance to evaluate and confirm plaintiff's condition. Defendants note that HUB Enterprises was named in defendants' Motion to List Additional Witness & Exhibit filed on July 22, 2005 and that the surveillance videotape was immediately provided to plaintiff once it was acquired by defense counsel. Defendants further note that at no time prior to trial did plaintiff ask to depose the investigator who conducted the video-taped surveillance. Regarding plaintiff's argument that the videotape could not be admissible impeachment because it depicts plaintiff engaging in activities and performing tasks that are not inconsistent with plaintiff's trial testimony as to what activities she is able and unable to perform, defendants counter that the surveillance tape was admissible to impeach plaintiff's testimony that "it hurts, even to do the simplest things that most people take for granted."
The determination of whether motion pictures or videotapes are admissible is largely within the discretion of the trial court. Olivier v. LeJeune, 95-0053 (La.2/28/96), 668 So.2d 347, 351.
We find no merit to plaintiffs argument that she was deprived of sufficient opportunity to conduct meaningful discovery regarding the integrity of the video-taped surveillance. We also agree that the surveillance videotape was admissible for impeachment purposes, given plaintiffs testimony that "it hurts, even to do some of the simplest things that most people take for granted." Further, after thoroughly reviewing the surveillance tape at issue, we are unable to say it is so inflammatory that any probative value is outweighed by the danger of unfair prejudice. Thus, we find no abuse of discretion by the trial court in admitting the videotape into evidence and in denying plaintiffs motion to strike. These arguments also lack merit.
Plaintiff next contends that while the jury was viewing the surveillance videotape, Mr. Stroud made an inappropriate comment and that the trial court erred in failing to "timely" admonish the jury to disregard the remark. According to plaintiff, after the tape was viewed by the jury, counsel for plaintiff approached the bench and informed the trial court that during *935 the viewing of the videotape, Mr. Stroud "whispered very loudly `she's a hooker' within earshot of the jury." Counsel for plaintiff stated that the remark was overheard by her co-counsel. Counsel for plaintiff then asked the court to either instruct Mr. Stroud to apologize or to instruct the jury to disregard any comments that he may have made. The trial judge stated that he did not hear Mr. Stroud make the remark, but agreed that he would inform the jury to disregard any comments made except for those made by the attorneys before or during the viewing of the videotape. The transcript shows that the court then took a ten-minute recess at the request of a juror. Once the jury was brought back into the courtroom, the court gave the following admonishment:
[A]ny comments or any things that were made at the time of the video that you may have heard, maybe said in the audience or by anybody here, you are to completely disregard; i.e., the only thing that you are to take out of that would be what you saw and heard on the video.
Given these circumstances, we find no error. Plaintiff's counsel requested an admonishment, which the court then adequately provided to the jury once the jury reconvened after the ten-minute recess requested by a juror. We do not find that an admonishment made some ten minutes after it was requested so untimely as to render the admonishment ineffective.
This assignment also lacks merit.

Motion to Strike and/or Limit Expert Testimony
In this assignment, plaintiff contends the trial court erred in denying her motion to strike and/or limit the expert testimony of Dr. David Aiken, an orthopedic surgeon. Dr. Aiken, whose expertise was stipulated to by plaintiff at trial, was called by defendants to testify as an expert in the field of orthopedic and lumbar spine surgery. Although accepted as an expert, plaintiff challenges the methodology surrounding Dr. Aiken's conclusions concerning causation and plaintiff's injuries as unreliable, under the standards set forth in Daubert.[3] Specifically, plaintiff contends that because Dr. Aiken did not physically examine plaintiff, but rather based his opinions on plaintiff's medical records, his "findings" were not admissible under Daubert.
Plaintiff suggests that Dr. Aiken's expert testimony would meet the standards set forth in Daubert, had he made a "differential diagnosis." In support, plaintiff relies on Corley v. State, Department of Health and Hospitals, 32,613 (La.App. 2nd Cir.12/30/99), 749 So.2d 926, a medical malpractice case that discusses the duty of a treating physician to make a differential diagnosis when the physician is unable to make a specific diagnosis. Corley v. State, Department of Health and Hospitals, 749 So.2d at 932. We note, however, that the discussion in Corley, that plaintiff relies on focused on the obligation and duty applicable to the treating physicians therein.
We likewise find no support in Keener v. Mid-Continent Casualty, XXXX-XXXX (La. App. 5th Cir.4/30/02), 817 So.2d 347, writ denied, XXXX-XXXX (La.9/20/02), 825 So.2d 1175, another case cited by plaintiff. In Keener, the defendants argued that a "differential diagnosis" made by plaintiff's treating neurologist was erroneous. Keener v. Mid-Continent Casualty, 817 So.2d at 353-354.
*936 Defendants assert that plaintiff has confused the standard of care owed by a physician to his patient with the threshold standards for determining the admissibility of the testimony of a physician rendering an opinion for trial purposes. Defendants stress that at no time during Dr. Aiken's testimony did he attempt to render a diagnosis, but, instead offered an opinion as a stipulated expert in the field of orthopedic surgery that he did not believe that plaintiff suffered an injury as a result of that accident. Defendants further note that when Dr. Louis Provenza, plaintiff's treating neurological surgeon, was questioned as to whether it was a breach of the standard of care to make a determination of the cause of an injury without examining the patient, Dr. Provenza responded that while it may be a breach of the standard of care to make a diagnosis without conducting the necessary examination and testing, "you can have an opinion of the cause without examining the patient."
In the instant case, Dr. Aiken was called by the defendants to offer his expert medical opinion regarding plaintiff's injuries and their relationship, if any, to the August 2001 accident based on his review of plaintiffs medical records. These records included her cervical and lumbar MRI scans dated March 7, 2005; the report by Dr. Landry, a radiologist; the records of Dr. Raul Reyes, plaintiffs treating general surgeon; the records of Dr. Provenza; and certain Slidell Memorial Hospital Emergency Room records. Based on his review of plaintiff's medical records, Dr. Aiken stated that he felt cervical surgery was not warranted in plaintiff's case and that the records he reviewed did not indicate that plaintiff suffered a significant injury from the August 2001 accident. Further, Dr. Aiken was subjected to rigorous cross-examination on this testimony by counsel for plaintiff.
As set forth in Keener, the trial court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. Keener v. Mid-Continent Casualty, 817 So.2d at 354. As with all other admissible evidence, expert testimony is subject to being tested by "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Keener v. Mid-Continent Casualty, 817 So.2d at 354-355 (citing Daubert, 509 U.S. at 596, 113 S.Ct. at 2798). Moreover, we note that after weighing and evaluating all of the evidence, a jury is free to accept or reject the opinions expressed by experts. Hoyt v. State Farm Mutual Automobile Insurance Company, 623 So.2d 651, 659 (La.App. 1st Cir.), writ denied, 629 So.2d 1179 (La. 1993).
The jury was aware that Dr. Aiken did not examine plaintiff, and that Dr. Aiken did not have the benefit of plaintiff's July 2002 MRI scans, or the report of Dr. Krieger, a physician who saw plaintiff at the request of one of the defendant insurers. Further, Dr. Aiken explicitly stated that his opinion was based solely on the records and MRI scans that he reviewed, and not on any physical examination of plaintiff. We conclude that this evidence was clearly admissible and that the trial court did not err in allowing the jury to evaluate his testimony, determine the weight to be given to it, and to thereby accept or reject Dr. Aiken's opinions. While we acknowledge that a treating physician is obligated to take necessary steps to make a "differential diagnosis" when a diagnosis of the patient cannot be made, we reject plaintiff's blanket contention that an expert medical witness must physically examine the plaintiff and make a "differential diagnosis" for his opinion testimony to be admissible under the standards set *937 forth in Daubert. Thus, we find no error by the trial court in admitting Dr. Aiken's testimony.
This assignment also lacks merit.

Objections During Plaintiff's Closing Argument
Plaintiff next argues that the trial court erred in limiting her closing argument, with regard to her units-of-time argument, and that objections by defense counsel were "done simply to distract the jury's attention" and were "highly unfair."
In her closing argument, when discussing how the jury should arrive at an award for plaintiff's pain and suffering, counsel for plaintiff stated:
If you haven't already tried to do so, I want you to imagine what chronic pain is in units of time. Take one minute, for instance. I'm going to stop talking for one minute now. And I want you to close your eyes and think about chronic pain for one minute of time, and I'll tell you when to open them.
You can open your eyes now. Did that feel like a long time? How about 10 minutes for that pain? 10 minutes  did I say 10 minutes? How about 10 cents for that minute, for that minute of pain? Chronic back pain, chronic neck pain disability. What does 10 cents a minute translate to? Let's think about that a minute. What does that translate to?
Counsel for defendants then objected and an off-the-record discussion was held at the bench. The basis of the objection was that a "units-of-time" argument was not proper argument for the jury. The trial court noted the objection, but overruled it, and counsel for plaintiff continued her closing argument, urging the jury to calculate damage awards utilizing a units-of-time theory.
During a subsequent recess, counsel for defense provided the trial court with the citation to a Third Circuit case, McWard v. Independent Fire Insurance Company, 482 So.2d 984, 985 (La.App. 3rd Cir.1986), which held that such units-of-time arguments are generally not acceptable. The defendants then requested that the trial court admonish the jury that such arguments were improper and that the jury should disregard them. The trial court did not admonish the jury, but instead instructed counsel for plaintiff not to "go there again" in her rebuttal argument.
Pretermitting whether or not a units-of-time argument is acceptable in this circuit, for the purpose of this assignment, we note that despite defendants' objection, counsel for plaintiff was initially allowed to continue her argument to the jury to use the units-of-time theory in calculating any awards due plaintiff. Moreover, the trial court never instructed the jury to disregard this method of calculation. Instead, after the trial court was provided with authority from defendant, it only admonished counsel for plaintiff "not to go there" in her rebuttal. Moreover, because counsel for defendants provided authority for his objection, we do not find that the objection was made in bad faith for the purpose of distracting the jurors.
Plaintiff further argues that defense counsel acted improperly when, during closing arguments, counsel for defendants again objected on the basis that there had been no testimony or projections made concerning plaintiff's life expectancy when plaintiff's counsel suggested that plaintiff's life expectancy be considered in calculating the general damage award. Considering the evidence actually introduced herein, this line of argument by plaintiff's counsel was obviously improper. Thus, the defendants' objections were properly sustained by the trial court. Accordingly, *938 we are unable to find that the objection was made in bad faith.
While we decline to discuss in detail each remaining objection made by defendants that plaintiff complains of on appeal, we observe that a review of the transcript shows that counsel for plaintiff and defendants each made objections to the accuracy of various statements made by the other during closing arguments and rebuttal. After thorough review, we find defense counsel provided a rational basis to support each objection. Thus,[4] we are unable to find that the trial court erred or that the objections were made in bad faith "simply to distract the jury."
This assignment also lacks merit.

THE JURY VERDICT

(Assignment of Error Number Seven)
In a trial where causation and credibility are major issues, a jury's findings of fact are entitled to great deference. Guillory v. Insurance Company of North America, 96-1084 (La.4/8/97), 692 So.2d 1029, 1032. Those findings may not be overturned unless they are manifestly erroneous. Stobart v. State, Department of Transportation and Development, 92-1328 (La.4/12/93), 617 So.2d 880, 882. Moreover, when more than one competing view is permissible, as in this case, a fact finder's choice cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Before reversing a jury's conclusions of fact, an appellate court must satisfy a two-step process based on the record as a whole: There must be no reasonable factual basis for the trial court's conclusions and the finding must be clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 433 (La.1991). Plaintiff must prove causation by a preponderance of the evidence. Maranto v. Goodyear Tire & Rubber Company, 94-2603, 94-2615 (La.2/20/95), 650 So.2d 757, 759. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Company, 650 So.2d at 759 (citing Mart v. Hill, 505 So.2d 1120 (La. 1987)).
Plaintiff contends that although she declined medical assistance at the scene and advised the officer that she was "okay," the jury erred in finding no causation, where she experienced "soreness and stiffness" after the accident. Plaintiff candidly testified, however, that she did not seek medical treatment for these complaints from the time of the accident in August 2001 until some ten months later, in June 2002. Further, although plaintiff claimed that after the accident, she was unable to get on the roof and perform roofing work tearing and cleaning and nailing shingles, she testified that she continued working at various jobs after the accident, i.e., for the roofing company performing errands and secretarial work, as a merchandiser, at a Subway restaurant, and at a Dollar Store.
*939 Moreover, in the interim between the accident and her commencement of treatment, plaintiff was involved in an altercation with a friend on April 10, 2002, in which she was "punched" in the eye, causing her to fall to the ground. Plaintiff testified that upon her fall to the ground, her head hit "little rocks" in the driveway and she was rendered unconscious, necessitating emergency medical treatment. Plaintiff's emergency room medical records from the incident indicate that plaintiff suffered a "blunt trauma to head" and "[t]rauma with pain in the neck and chest," and that as a result, plaintiff sustained a fracture on the left orbital wall of her face. X-rays revealed "Prevertebral soft tissues are normal. There is normal alignment of the cervical spine. The odontoid process, vertebral bodies, vertebral arch complexes, disc spaces and neural formina are within normal limits." On April 15, 2002, five days later, plaintiff appeared for a follow-up visit with Dr. Beth Clark, an ENT physician, to remove stitches from her eyes. Importantly, Dr. Clark's records from that visit indicate that plaintiff complained of "pain in her neck & shoulders."
The record reveals that the jury was presented with two competing views regarding the nature, extent, and cause of plaintiff's injuries. Plaintiff's expert, Dr. Provenza, testified that in his opinion, plaintiff's cervical disc herniation was caused by the August 2001 accident, not the incident in April of 2002. Defendant's expert, Dr. Aiken, testified contrariwise. Although Dr. Provenza ruled out plaintiff's intervening fall as a cause of her injuries, Dr. Aiken testified that it was not uncommon for someone to suffer injury to their neck after receiving a significant blow to the head, explaining as follows:
[W]hen there's a blow to the head and the head is  the head jerks in some direction opposite from where it was hit, that jerks the neck and accelerates the neck; and that will tear muscles and ligaments in the neck and that will cause neck pain and that will not be visible on an x-ray in any respect. So I don't think it's reasonable to say that you can look at x-rays and tell there was no neck injury.
I think if the patient complains of neck pain, that is a better sign that there's been a neck injury than if the x-rays are normal.
When asked if he thought it was "reasonable for Dr. Provenza to look at the patient in April and at the incident in August and then look at an MRI film after both of those incidents and say that he can relate a certain injury to the neck to one accident or the other," Dr. Aiken answered, "No, that's not medically reasonable."
The jury heard this testimony and was required to make findings based on credibility determinations. Apparently, the jury credited Dr. Aiken's testimony, and decided to give it more weight, and rejected plaintiff's version of these events and the explanations and opinions of her physician. Given her delay in seeking treatment, the intervening incident, and the defendants' challenges to plaintiff's testimony, we are unable to find the jury erred in its decision to reject plaintiff's claim or in finding that causation was not established. Because there is a reasonable factual basis for the jury's conclusions, we cannot say the jury's finding that plaintiff's injuries were not causally related to the August 2001 accident is clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
Although plaintiff argues that the testimony of Dr. Provenza, her treating physician, was entitled to more weight than that of Dr. Aiken, defendants' expert, the proper *940 inquiry is whether, based on the totality of the record, the jury was manifestly erroneous in accepting the expert testimony presented by defendants over that presented by plaintiff. See Miller v. Clout, XXXX-XXXX (La.10/21/03), 857 So.2d 458.[5]
After a thorough review of the record herein, we cannot conclude that the jury's findings are unreasonable. Because we find no merit to this argument and affirm the jury's finding that plaintiffs injuries are not causally related to the August 2001 accident, we pretermit discussion of plaintiff's remaining assignment of error challenging the trial court's grant of a directed verdict and dismissal of plaintiff's claims of negligent entrustment.

CONCLUSION
For the above and foregoing reasons, the August 24, 2005 judgment of the trial court is affirmed. Costs of this appeal are assessed against appellant, Brenda G. Breitenbach.
AFFIRMED.
NOTES
[1] Louisiana Code of Evidence article 403 provides, as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time.
[2] See LSA-R.S. 40:967(C) (where a conviction of possession of a Schedule II narcotic is punishable by a term of imprisonment up to five years and a fine of up to $5,000.00).
[3] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[4] Moreover, we are unable to see how plaintiff was prejudiced in her presentation when the trial court granted, over defendants' objection, plaintiff's counsel additional time to complete her argument.
[5] In Miller, the Louisiana Supreme Court found error in the appellate court's conclusion that the jury was manifestly erroneous in giving the defendants' medical expert's testimony greater weight than the plaintiff's treating physician. Accordingly, the Supreme Court reversed the decision, stating:

In its opinion, the court of appeal relied on a jurisprudential doctrine developed in the appellate courts which indicates the testimony of a treating physician should be accorded greater weight than the testimony of a physician who has only seen the party for purposes of rendering an expert opinion concerning the party's condition. However, courts applying that doctrine have held the treating physician's testimony is not irrebuttable, as the trier of fact is required to weigh the testimony of all the medical witnesses. Thus, reduced to its essentials, the inquiry is whether, based on the totality of the record, the jury was manifestly erroneous in accepting the expert testimony presented by defendants over that presented by plaintiff. (Citations omitted.)
Miller v. Clout, 857 So.2d at 462, n. 3.