CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE
v.
TERRACE LAND COMPANY, INC./TERRACE LAND COMPANY, LLC
No. 2006 CA 2107.
Court of Appeal of Louisiana, First Circuit.
September 14, 2007.
NOT DESIGNATED FOR PUBLICATION
E. WADE SHOWS, LEO J. D'AUBIN, GWENDOLYN K. BROWN, LARRY D. BOOK, Baton Rouge, LA, Attorneys for Plaintiff-Appellant City of Baton Rouge and Parish of East Baton Rouge.
CHRISTY R. BERGERON, MARGUERITE K. KINGSMILL, RANDALL A. SMITH , L. TIFFANY DAVIS, New Orleans, LA, Attorneys for Defendant-Appellee Terrace Land Co., Inc./Terrace Land Co., LLC.
Before: CARTER, C.J., PETTIGREW, and WELCH, JJ.
WELCH, J.
Plaintiff, the City of Baton Rouge/Parish of East Baton Rouge (City/Parish), appeals a judgment awarding defendants, Terrace Land Company Inc./Terrace Land Company, LLC (Terrace Land) additional just compensation in this expropriation proceeding. We affirm.

BACKGROUND
The City/Parish undertook a public works project to construct a service road for Interstate 10 between Bluebonnet Boulevard and Siegen Lane in Baton Rouge, Louisiana, known as the "Picardy Avenue Interchange." In 2002, the City/Parish notified Terrace Land that it intended to acquire a portion of a 16-acre tract of land fronting Interstate 10 owned by Terrace Land. The property, located one-fourth a mile from Siegen lane, is comprised of seven lots in the Audubon Terrace subdivision and a vacant tract of land adjacent to the subdivision totaling 2.88 acres. At the time, the property was zoned A-1 residential for single-family residential use.
In 2002, the City/Parish hired Michael Defelice, a real estate appraiser, to determine the value of the Terrace Land property. He submitted a valuation to the City/Parish on May 9, 2002, in which he determined that the highest and best use of the property was residential. In determining the value of the Terrace Land property, Mr. Defelice used sales of four vacant tracts that had been zoned A-1 residential in the area, all of which occurred in 1999. Mr. Defelice valued the subdivision lots at $270,000.00 and the bulk acreage tract at $188,700.00, thus totaling $458,700.00.
Terrace Land disagreed with the valuation. On March 10, 2003, the City/Parish initiated this expropriation proceeding to acquire the Terrace Land property by depositing $458,700.00 into the registry of the court and obtaining an ex parte order of expropriation. Terrace Land contested the taking of its property and filed a motion to dismiss the expropriation proceeding, which was denied by the trial court. Thereafter, Terrace Land withdrew the $458,700.00 deposited by the City/Parish into the registry of the court.
Prior to trial, the parties stipulated that Terrace Land accepted the valuator of $270,000.00 as just compensation for the expropriated portions of Lots 130 and 137 of Audubon Terrace subdivision, and no issues relating to those lots would be presented to the jury. Thereafter, a five-day jury trial was held to determine the issue of just compensation for the taking of the bulk acreage tract and whether the taking affected the value of the remaining portion of the 16-acre tract.
At trial, Terrace Land sought to establish that the property had a higher valuation than that offered by the City/Parish's appraiser. In so doing, it offered testimony showing that the highest and best use of the property was as a small planned unit development or "S.P.U.D," a development designed for low-density single-story commercial offices in a neighborhood setting. Terrace Land also attempted to demonstrate there was a reasonable probability a zone change could be obtained to achieve that use. Terrace Land's appraiser, Tom Cook, considered sales of other properties in the area from 2002 to the early part of 2003, some of which had been sold for S.P.U.D. type developments. He valued the two-acre tract at $597,556.08. He also opined that the value of the property remaining after the taking would be diminished by $704,887.92, setting the total compensation owed by the City/Parish for the land taken and damages to the remainder at $1,302,444.00.
At the conclusion of Terrace Land's case, the City/Parish moved for a directed verdict, arguing there was no evidence demonstrating there was a reasonable probability that the property could be rezoned; therefore, there was nothing to support the basis of Mr. Cook's appraisal. It also asserted that the jury should be precluded from considering Mr. Cook's testimony because Mr. Cook made some across-the-board adjustments when setting a valuation based on other sales and urged that such across-the-board adjustments were not approved by the standards of real estate practice.
The trial court denied the motion. Specifically, the court found that there was evidence upon which reasonable persons could conclude there was a reasonable probability that a zoning change could be achieved through the testimony of Mr. Cook and two real estate experts testifying for Terrace Land. Regarding Mr. Cook's appraisal, the court stressed that while Mr. Cook acknowledged that he did not strictly follow the standards set forth for appraisers in making adjustments, there was no legal requirement that there be a complete adherence to industry standards in order for an appraiser to testify. The fact that Mr. Cook used different methods in appraising the property, the court observed, was an issue going to the weight of Mr. Cook's testimony.
Thereafter, the City/Parish put on the testimony in support of its claim that there was no reasonable probability the property could have been rezoned to support a S.P.U.D. development. The City/Parish's planning director attested that his office, the Planning and Zoning staff, would have recommended denying any attempt to rezone the Terrace Land property. The City/Parish also offered the testimony of the president of a homeowner's association comprised of members in two subdivisions located near the Terrace Land property, who stated that the members would oppose any rezoning efforts. Lastly, Mr. Defelice testified regarding his appraisal methods, and opined that obtaining rezoning to effect a S.P.U.D. development on the subject property was not reasonably probable based on his awareness that the staff of the Planning Commission would have opposed such a use of the property.
Following the conclusion of the five-day jury trial, the jury awarded Terrace Land the sum of $597,556.08 as compensation for the property taken, in accordance with Mr. Cook's valuation of the property. The jury declined, however, to award any severance damages. The trial court entered judgment in favor of Terrace Land for additional compensation in the amount of $408,856.00 (representing the stipulation of the parties that the subdivided lots were valued at $270,000.00 and the jury's finding that the vacant acreage had a value of $597,556.00, less the $458,700.00 deposit withdrawn from the registry by Terrace Land).
The City/Parish filed a motion for a Judgment Notwithstanding the Verdict (JNOV), urging that there was insufficient evidence to support Mr. Cook's opinion as to the valuation of the property based on a reasonable probability of obtaining rezoning. Further, the City/Parish argued the jury verdict was inconsistent because it awarded Terrace Land the higher value of the expropriated property offered by Mr. Cook but rejected his testimony regarding severance damages to the remaining tract. In denying the motion, the trial court observed that this trial basically involved a "battle of [the] experts," who expressed differences of opinions regarding the highest and best use of the property, with the jury obviously accepting the testimony of Terrace Land's experts. Moreover, the court observed, there was nothing inconsistent in the jury verdict because if the jury accepted that the property could be rezoned and developed as a S.P.U.D., there would be no severance damages because that property could be used to support a S.P.U.D. development.
Terrace Land filed a motion for attorney fees, expert fees, and costs. The trial court granted the motion, ordering the City/Parish to pay attorney fees in the amount of $105,000.00, as well as court costs and expert witness fees.
In this appeal, the City/Parish urges that the trial court erred in denying the JNOV and that the court should have excluded the testimony of Terrace Land's appraiser. The City/Parish also submits that the court erred in denying its request for an interrogatory concerning the possibility of rezoning.
Terrace Land answered the appeal seeking an increase in the amount of attorney fees and costs awarded. The City/Parish filed a rule to show cause why the answer should not be dismissed, and on April 5, 2007, this court dismissed the answer, finding it to be untimely. City of Baton Rouge and Parish of East Baton Rouge v. Terrace Land Company, L.L.C., 2006-2107 (La. App. 1st 4/5/07). Also on that day, this court referred the merits of the City/Parish's motion to supplement the record to include its proposed jury instructions and interrogatories submitted at trial to this panel. We hereby grant the motion to supplement the record.

JURY VERDICT FORM
The jury verdict form submitted to the jury asked the jury to answer two questions: (1) what was the value of the land taken by the City/Parish and (2) what was the value of severance damages, if any, to the remainder of Terrace Land's property. The City/Parish contends that the trial court committed reversible error in failing to include a "yes or no" question to the jury regarding whether there was a reasonable probability that rezoning could be achieved, as requested by the City/Parish.[1]
In determining the fair market value of land taken in an expropriation case, consideration is given to the most profitable use to which the land can be put, known as the "highest and best use" doctrine. Exxon Pipeline Co. v. Hill, 2000-2535, 2000-2559, p. 8 (La. 5/15/01), 788 So.2d 1154, 1160. It is well established that the current use of the property is presumed to be the highest and best use, and the burden of overcoming that presumption by proving the existence of a different highest and best use based on a potential, future use, is on the landowner. Exxon, 2000-2535 at pp. 8-9, 788 So.2d at 1160.
It is undeniable that development of the property as a S.P.U.D. would have required a zoning change. Thus, in order to support its valuation claim, Terrace Land was required to demonstrate the reasonable probability of obtaining the rezoning necessary for development of the property as a S.P.U.D. in the reasonably foreseeable future. See West Jefferson Levee District v. Coast Quality Construction Corporation, 93-1718, p. 20 (La. 5/23/94), 640 So.2d 1258, 1275, cert. denied sub nom., Bayou Des Families Development Corp. v. West Jefferson Levee Dist., 513 U.S. 1083, 115 S.Ct. 736, 130 L.Ed.2d 639 (1995).
The City/Parish submits that the court erred by failing to issue the requested interrogatory because it involved a determination critical to a just disposition to the case. It posits that the failure to include an interrogatory regarding the reasonable probability of obtaining a rezoning is analogous to failing to include an interrogatory regarding liability of the defendant in a personal injury case, assuming the jury will factor that issue into its ultimate determination of damages. Thus, the City/Parish contends, without the requested interrogatory, the interrogatories actually submitted to the jury served to mislead and confuse the jury regarding the proper inquiries.
The record reflects that the trial court gave the jury the following instructions regarding Terrace Land's burden of proving there existed a reasonable probability that rezoning could be achieved:
The current use of the property is presumed to be the highest and best use, and the burden of overcoming that presumption by proving the existence of a different highest and best use on a potential, future use is on the landowner. Specifically, where a permit or zoning change is necessary for development of the land in order for the land to be put to its alleged highest and best use, the landowner bears the burden of proving the reasonable probability of obtaining the permit or zoning change necessary for development in the reasonably foreseeable future.
Where there is no reasonable probability a permit for the necessary development could be obtained or that a change in zoning classification allowing such development could occur in the reasonably foreseeable future, the asserted higher use may not be considered as the highest and best use of the property for purposes of market valuation because such use would be illegal.
In reviewing a jury verdict form, this court employs a manifest-error, abuse of discretion standard of review. Ford v. Beam Radiator, Inc., 96-2787, p. 3 (La. App. 1st Cir. 2/20/98), 708 So.2d 1158, 1160. A jury verdict form may not be set aside unless the form is so inadequate that the jury is precluded from reaching a verdict based on correct law and facts. Jury forms or interrogatories that are misleading or confusing may constitute reversible error. Id.
In the instant case, the trial court gave the jury detailed, lengthy instructions in accordance with the well-establish legal principles regarding a landowner's burden of proof when a zoning change is necessary to obtain a better and higher use for the property. Moreover, the record reflects that witnesses were questioned regarding the reasonable probability of rezoning and how their opinions on that issue affected the valuation of the Terrace Land property. For these reasons, we conclude there is no reasonable possibility that the jury was misled or confused by the absence of the requested jury interrogatory and find no error in the trial court's failure to include it on the jury verdict form.

EXPERT TESTIMONY
The City/Parish contends that the trial court erred in refusing to exclude the testimony of Mr. Cook. At the conclusion of Terrace Land's case, the City/Parish made a motion for a directed verdict, asserting that Mr. Cook's testimony should not be considered by the jury on the basis that his appraisal did not conform to accepted standards of real estate appraisal. In this appeal, the City/Parish submits that Mr. Cook's methodology was so fundamentally flawed as to render his testimony unreliable; and therefore, the trial court should have exercised its "gatekeeping function" to exclude his appraisal. The City/Parish urges that because the jury obviously relied on Mr. Cook's fatally deficient conclusions in reaching its verdict, the verdict must be reversed.
Mr. Cook was accepted at trial as an expert in real estate valuation and appraisal. The City/Parish raised no objection to Mr. Cook's qualification to testify as an expert appraiser. During the course of his testimony, Mr. Cook explained in detail how he arrived at his ultimate conclusions in appraising the subject property. Mr. Cook attested that before making any conclusions, he went out to inspect the property and neighborhood and studied the trends in the neighborhood at the time, what new developments were taking place, and how the subject property could be impacted by the neighborhood and the surrounding area. He also studied comparable sales of other properties that took place from 2000 until shortly before the taking, which he felt were indicative of the market value of the Terrace Land property. Mr. Cook's land sale summary was presented to the jury through a power-point presentation.
In arriving at his ultimate conclusion that the Terrace Land property had a fair market value of $4.75 a square foot prior to the taking, Mr. Cook made numerous adjustments for various factors, including the following: increased inflation, flood zone status, interstate influence, location, corner influence, shape and physical characteristics, and frontage size. He made a final adjustment to the values for the problems that a developer would have to encounter to have the property rezoned from residential to S.P.U.D. use. In so doing, Mr. Cook adjusted each of the subject sales downward 20% across-the-board for "hassle" to get the subject property rezoned, acknowledging that he made a "pretty heavy" hit on the subject property to compensate for the zoning issues.
On cross-examination, Mr. Cook was questioned extensively regarding the methodology he employed in arriving at his appraisal. It was revealed that in addition to making an across-the-board reduction in value of the comparable sales in the case of the zoning issue, Mr. Cook also made an across-the-board adjustment of 5% in considering the shape of the various properties to reflect that the subject property had an unusual shape, and also adjusted all of the comparables downward 10% for sound wall visibility. Mr. Cook acknowledged that it is a standard practice of appraisal to make adjustments considering the comparable properties individually rather than to make across-the-board adjustments, and if he had it to do over again, he would have accommodated for the differences in the properties in making the adjustments. On re-direct examination, however, Mr. Cook stressed that he did make individual adjustments in a number of instances. He also attested that while he may have made different adjustments, he still would have arrived at the same ultimate conclusion regarding the value of the Terrace Land property.
The City/Parish failed to offer evidence supporting its claim that Mr. Cook's testimony was so unreliable that a jury should be precluded from considering his valuation. Indeed, its own expert, Mr. Defelice, was asked whether it was appropriate to make across-the-board adjustments for factors such as the physical shape over every one of the nine properties in Mr. Cook's study. Although acknowledging that the recognized methods for evaluation of a comparable are to consider the individual facts about the comparable that require an adjustment, Mr. Defelice testified that he was very hesitant to criticize Mr. Cook and his appraisal. Moreover, the City/Parish did not offer a specific written standard prohibiting across-the-board reductions in adjusting comparables. Instead, it offered a general rule requiring that an appraiser must be aware of and correctly employ recognized methods and techniques necessary to produce a credible appraisal.
As this court has consistently observed, a trial court need not determine that expert testimony is irrefutable or certainly correct. Breitenbach v. Stroud, XXXX-XXXX, pp. 13-14 (La. App. 1st Cir. 2/9/07), 959 So.2d 926, 936. As with all other admissible evidence, expert testimony can be tested by vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof. Id., XXXX-XXXX at p. 14, 959 So.2d at 936. Considering the absence of proof in the record demonstrating a fatal flaw in Mr. Cook's methodology and the rigorous cross-examination to which Mr. Cook was subjected, we conclude that any deviation from the standard practices made by Mr. Cook in reaching his valuation of the property was an issue going to the weight of his testimony, rather than to its admissibility. Accordingly, we find no error in the trial court's determination to allow Mr. Cook's valuation testimony to be presented to the jury.[2]

JNOV
Finally, the City/Parish contends that the trial court erred in denying its motion for a JNOV. A JNOV is warranted only when the facts and inferences, viewed in the light most favorable to the party opposing the motion, is so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary conclusion. Peterson v. Gibraltar Savings and Loan, 98-1601, pp. 5-6 (La. 5/18/99), 733 So.2d 1198, 1203. The motion should be granted only when evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. Id., 98-1601 at p. 6, 733 So.3d at 1203. A trial court's refusal to render a JNOV can only be overturned if it is manifestly erroneous. Id.
The City/Parish contends that no reasonable jury could have found that there was a reasonable probability the Terrace Land property could be rezoned for S.P.U.D. use. Therefore, it posits, the jury could not accept Mr. Cook's valuation and should have accepted Mr. Defelice's valuation based on the residential value of the property. We disagree.
There can be no doubt that this case, as the trial court observed in denying the JNOV, involved a "battle of [the] experts." Mr. Cook opined that the highest and best use of the property was a S.P.U.D. development, and that there was a reasonable probability that the property could be rezoned to achieve that use. Mr. Defelice, however, opined the highest and best use of the property was residential and that rezoning to achieve a higher use of the property was not reasonably probable.
Two expert real estate brokers, Michael Falgoust and George Kurz, who had extensive experience in the Baton Rouge area and in handling zoning issues for their clients, testified on behalf of Terrace Land. Both expressed their opinion that based on their experience in the Baton Rouge area, the highest and best use of the Terrace Land property was a S.P.U.D. However, neither witness was able to express an opinion regarding the probability that rezoning could be achieved, as the trial court sustained the City/Parish's objection to Terrace Land's attempts to elicit such opinion testimony from these witnesses on the ultimate issue before the jury.
Nevertheless, the brokers' testimony provides a foundation for the jury to find there was a reasonable probability that rezoning could be obtained. Mr. Falgoust explained that he assisted in writing the City/Parish's Uniform Development Code in 2003, particularly the sections dealing with a S.P.U.D. designation. He described a S.P.U.D. as a "transitional type zoning" in which the offices are basically built like houses, and appear to be part of a neighborhood. Through his testimony, the jury was presented with a diagram showing Terrace Land's proposed S.P.U.D., "Siegen Terrace," which had lots for single-family residences and six commercial single story buildings with a neighborhood office, a proposed service road, and a buffer drawn in.
Mr. Falgoust attested that the Siegen Lane area was one of the largest growth areas in Baton Rouge, and given the location of the Terrace Land property, one would expect it to be developed as a S.P.U.D. He also discussed his involvement in 2002 with a sale of a two-acre tract on Bluebonnet Boulevard near Siegen Lane that was zoned residential, but was purchased by a developer at the higher commercial S.P.U.D. price of $5.12 a square foot, noting that the developer was able to obtain a zoning change to develop the S.P.U.D. Mr. Falgoust revealed that his own office building is in a S.P.U.D. located one mile from the Terrace Land property, and that like the proposed "Siegen Terrace" S.P.U.D., is accessed by going past a residential subdivision.
Mr. Kurz stated that he served on the City/Parish's Planning Commission Advisory Committee for several years, a zoning advisory committee for East Baton Rouge Parish, and had extensive personal experience in rezoning efforts. He expressed his belief, based on his experience dealing with developers in the Baton Rouge area, that there would have been interest in developing the Terrace Land property as a S.P.U.D. at the time of the taking.
Mr. Kurz's testimony established that the Terrace Land property is located in Planning District 16, which has been identified by the City/Parish as experiencing the fastest rate of growth of all 16 planning districts in East Baton Rouge Parish. He also attested that the property is located between two different growth centers. Mr. Kurz explained that growth centers identify the "hot spots" in terms of what is being developed and where the property is in greatest need, and stressed that the fact the Ten-ace Land property was located near these significant growth centers meant, in terms of potential development, that there was a greater demand and a greater need for the property. Through his testimony and Growth Center Community Planning Process Reports prepared by the City/Parish's Planning Commission, it was revealed that from 1992-1997, of the 47 rezoning requests in Growth Center 5, located adjacent to the Terrace Land property, 46 were approved and only one was denied. From 1998-2003, there were 13 requests for rezoning in Growth Center 5, with 12 requests approved and only one denied.
Mr. Cook testified that he considered several different uses for the Terrace Land property before determining that its highest and best use was a S.P.U.D. He opined that it was reasonably probable that the property could be rezoned because it adjoins the interstate and has good access protected by a traffic light. He also stressed that the property is only 720 feet from the intersection, and in that 720 feet, there are seven residences and eight pieces of vacant land. Moreover, he noted, developers were having great success in obtaining rezoning for their projects at the time. Mr. Cook opined there was reasonable probability that a developer would purchase the subject property with a 20% reduction in value for the rezoning effort, stressing the fact that the property has considerable frontage on Interstate 10 and the visibility factor making a S.P.U.D. development attractive. Mr. Cook also expressed his certainty that a developer could have the subject property rezoned for S.P.U.D. use.
In support of its claim that a reasonable probability for rezoning did not exist, the City/Parish offered the testimony of Troy Bunch, who testified as an expert in the field of planning and zoning. Mr. Bunch was hired by the City/Parish in 1993 to implement the "Horizon Plan," a comprehensive land use plan for development and growth in Baton Rouge, and later became the planning director for the City/Parish. He testified that his office, the Planning and Zoning Staff, studies rezoning requests and then makes a recommendation to the Planning Commission. The Planning Commission, in turn, makes recommendations to the Metropolitan Council (Metro-Council), which ultimately determines whether to deny or grant a request. Mr. Bunch stated that since 1993, every zoning change request has come through his office. He estimated that 90% of the time, the Planning Commission accepts the recommendation of his office, and 90% of the time, the Metro-Council accepts the recommendation of the Planning Commission. He added that 90% of the time, the Metro-Council supports the decision of the councilman of the district in which the request is made.
Mr. Bunch testified that if there had been a request to rezone the Terrace Land property for the development of a S.P.U.D., his office would have opposed it based on the comprehensive plan for the City of Baton Rouge, which designates the area as low-density residential development. He stated that if the plan was submitted to his office in 2003, his office would have gathered information from engineers, homeowners, the district councilman, and the state representative of the district, and then would have conducted a study and analysis of the project and the desirability of the requested zoning change. However, he acknowledged he never saw the Terrace Land S.P.U.D. design and never spoke with any of the neighboring landowners about it. Additionally, during his cross-examination, the jury was presented with numerous instances near the time of the taking where either the Planning Commission voted to approve a zoning change where his office had recommended denying it, or the Metro-Council granted a zoning request where the Planning Commission recommended denying it. Of special note is that only two weeks before the taking in this case, Mr. Bunch's office recommended denying a request to amend a land use plan from low density residential to neighborhood office in connection with another proposed development, and the Metro-Council voted 8-0 to allow the zoning change.
The City/Parish also offered the testimony of Robin Hote, a resident of Morning Glen, a subdivision located adjacent to Audubon Terrace, and the president of the Homeowner's Association for Audubon Ten-ace subdivision. She stated that it was her perception, as president of the association, that the association would have opposed a neighborhood office development like the one proposed by Terrace Land. She acknowledged, however, that she had not spoken with any homeowners about this proposed development.
Lastly, Mr. Defelice stated that in selecting residential use as the "highest and best" use of the Terrace Land property, he analyzed the zoning potential for the property by meeting with the Planning Commission Staff. He expressed his belief that the Planning Commission's staff would oppose the S.P.U.D. use of the property, and therefore concluded that zoning as an office S.P.U.D. was not reasonably probable. On cross-examination, Mr. Defelice admitted that only one of the properties he used as a comparable in valuing the Terrace Land property had interstate frontage, and that property, while originally zoned residential, was subsequently approved for a residential S.P.U.D.
After a thorough review of the evidence, we find no manifest error in the trial court's refusal to grant a JNOV. Clearly, there was evidence providing a factual basis upon which a reasonable juror could have concluded that achieving rezoning of the Terrace Land property for development as a S.P.U.D. could be reasonably achieved. Such evidence includes the location of the property in the fastest growing district in East Baton Rouge Parish and its location between two growth centers, which put it in greater demand for this type of development, as well as the fact that a number of S.P.U.D.s had in fact been developed in close proximity to the property. Additionally, the jury was presented with a number of instances where S.P.U.D. rezoning had been granted for properties that were residential. Moreover, while Mr. Bunch stated that his office would have opposed any effort to rezone the Terrace Land property, he acknowledged he did not do the type of investigation into the merits of the proposed S.P.U.D. that his office normally does when considering a rezoning request; he did not speak to any residents about the proposed development; and he does not speak for the Planning Commission. Additionally, the jury, through Mr. Bunch's testimony, was presented with numerous instances where his office recommended denying a zoning request and the Planning Commission or the Metro-Council rejected that recommendation and approved it. Accordingly, as the City/Parish failed to demonstrate that no reasonable jury could have concluded there existed a reasonable probability of rezoning, the trial court correctly denied the motion for a JNOV.

CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. All costs, in the amount of $5,091.00, are assessed to appellant, City of Baton Rouge/Parish of East Baton Rouge.
AFFIRMED.
NOTES
[1] The record reflects that the City/Parish objected to the court's failure to include the requested question on the jury verdict form.
[2] We find no merit to the City/Parish's argument that Mr. Cook's valuation was fundamentally flawed because of his testimony that he was 100% certain that the S.P.U.D. rezoning could be achieved on the Terrace Land property, which is clearly a matter going to his credibility rather than the admissibility of his appraisal.